**Bernard L. ALPERT, Regional Director of the First Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**v.**

**LOCAL 800, INTERNATIONAL LONG-SHOREMEN'S ASSOCIATION, AFL-CIO, and Its Agent, Thomas McNiff; Local 799, International Longshoremen's Association, AFL-CIO, and Its Agent, Daniel Doherty; and International Longshoremen's Association, AFL-CIO, Respondents.**

**Civ. A. No. 63-10-J.**

United States District Court
D. Massachusetts.

Jan. 14, 1963.

Bernard L. Alpert, Director, Boston, Mass., Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. counsel, Julius G. Serot, Asst., Washington, D. C., Robert E. Greene, Reg'l Atty., Boston, Mass., Allan R. DeLong, Washington, D. C., Atty. for plaintiff National Labor Relations Board.

Withington, Cross, Park & McCann, John F. Groden, John M. Reed, Boston, Mass., for Wiggin Terminals.

Nathan Greenberg, Boston, Mass., for Locals 800 and 799.

JULIAN, District Judge.

This cause came on to be heard upon the verified petition of Bernard L. Alpert, Regional Director of the First Region of the National Labor Relations Board (herein called the Board), for a temporary injunction pursuant to Section 10(l) of the National Labor Relations Act, as amended (herein called the Act), pending the final disposition of the matters involved herein pending before the Board, and upon the issuance of an order to show cause why injunctive relief should not be granted as prayed in said petition. On January 8, 1963, at

4:44 p. m. this Court issued a temporary restraining order and order to show cause, notice of which was served upon the respondents on the same day. A hearing on the issues raised by the petition and answer was duly held on January 11, 1963. All parties were afforded full opportunity to be heard, to examine and cross-examine witnesses, to present evidence bearing on the issues, and to argue on the evidence and the law. The Court has fully considered the petition, answer, evidence, arguments, and briefs of counsel. Upon the entire record, the Court makes the following:

## FINDINGS OF FACT

1. Petitioner is Regional Director of the First Region of the Board, an agency of the United States, and filed the petition herein for and on behalf of the Board.

2. (a) On or about December 26, 1962, Wiggin Terminals, Inc. (herein called Wiggin), pursuant to provisions of the Act, filed a charge with the Board alleging that Local 800, International Longshoremen's Association (herein called Local 800), a labor organization, and its agent Thomas McNiff, have engaged in and are engaging in, unfair labor practices within the meaning of Section 8(b) (4) (i) and (ii), subparagraph (B), of the Act.

(b) On or about December 28, 1962, Wiggin, pursuant to the provisions of the Act, filed a charge alleging that Local 799, International Longshoremen's Association and International Longshoremen's Association (herein called Local 799 and International, respectively), labor organizations, and Local 799's Agent, Daniel Doherty, have engaged in, and are engaging in, unfair labor practices within the meaning of Section 8(b) (4) (i) and (ii), subparagraph (B), of the Act.

(c) On or about December 28, 1962, Wiggin, pursuant to the provisions of the Act, filed an Amended Charge to the Charge originally filed with the Board on or about December 26, 1962, said Amended Charge alleging that Local 800 and International, labor organizations, and Thomas McNiff, Local 800's agent, have engaged in and are engaging in, unfair labor practices within the meaning of Section 8(b) (4) (i) and (ii) (B), of the Act.

3. The aforesaid charges and amended charge were referred to petitioner as Regional Director of the First Region of the Board.

4. There is, and petitioner has, reasonable cause to believe that:

(a) Respondents Local 800, Local 799 and International, unincorporated associations, are organizations in which employees participate and which exist for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment or conditions of work.

(b) At all times material herein respondent Thomas McNiff has been business agent of respondent Local 800, and respondent Daniel Doherty has been business agent of respondent Local 799.

(c) Respondents Local 800, Local 799 and International maintain their principal offices at South Boston, Cambridge and Revere, Massachusetts, respectively, and at all times material herein all of respondents have been engaged within this judicial district in transacting business and in promoting and protecting the interests of the employee members of respondents Local 800, Local 799 and International.

(d) Wiggin is engaged in the Commonwealth of Massachusetts, in the operation of marine terminals, including warehousing and other facilities at the ports of South Boston and Charlestown, Massachusetts. In the operation of its business, Wiggin annually receives revenues in excess of $50,000 for the use of its facilities in the temporary storage of goods and materials being shipped from various states to other countries. Wiggin annually receives revenues in excess of $50,000 from companies which annually ship goods and materials valued

at in excess of $50,000 to states other than the states wherein the said companies are located.

(e) Among the companies for which Wiggin performs warehouse and cargo handling services at its South Boston and Charlestown terminal facilities are Weyerhauser Company, City Lumber Company, Commercial Solvents Company, Renault Distributors, Universal Atlas Cement Company and Hansen & McPhee Company (herein called, respectively, Weyerhauser, City, Commercial, Renault, Universal and Hansen).

(f) Wiggin also provides docking and wharfage services at its South Boston and Charlestown terminal facilities for various steamship companies, including Norton-Lilly Company, Peabody & Lane Company, Furness Withy, C. H. Powell & Company, and Boston Shipping Corporation (herein called, respectively, Norton, Peabody, Furness Withy, Powell and Boston).

(g) Stevedoring services, including the loading, unloading and receiving of goods, are performed at the docks and wharves at Wiggin's South Boston and Charlestown terminals by various stevedoring companies, including Nacirema Operating Company, Jarka Corp. of New England, John T. Clark & Son of Boston, Inc., Bay State Stevedoring Co., Inc., and Atlantic and Gulf Stevedoring, Inc. (herein called, respectively, Nacirema, Jarka, Clark, Bay State, and Atlantic). Such stevedoring companies are members of the Boston Shipping Association. Neither Wiggin nor any of the companies for which it performs terminal and warehousing services are members of said Shipping Association.

(h) At all times material herein, respondent labor organizations have been engaged in a labor dispute with the Boston Shipping Association and its constituent employer members. Included among them are Nacirema, Jarka, Clark, Bay State, Atlantic, Norton, Peabody, Furness Withy, Powell and Boston.

(i) At no time mentioned herein have respondent labor organizations had any dispute with Wiggin or its customers Weyerhauser, City, Commercial, Renault, Universal and Hansen for which Wiggin performs warehouse and cargo handling services.

(j) In furtherance of the aforesaid dispute with the Boston Shipping Association, since on or about December 24, 1962, respondents have picketed Wiggin's South Boston and Charlestown terminal facilities with signs which do not indicate the employer or employers with which respondents are involved in a dispute. The picketing was not limited to places reasonably close to the location of the situs of the employers with whom the respondents are engaged in a labor dispute. The picketing continued until January 10, 1963, at approximately 10:-30 a. m. notwithstanding notice of the temporary restraining order having been served upon the respondents on January 8, 1963. The respondents have not given the Court any assurance that such picketing will not be resumed.

(k) Respondents have picketed Wiggin's entire South Boston and Charlestown terminal facilities, notwithstanding the fact that Wiggin orally offered to respondents on December 24, 1962, and December 26, 1962, the opportunity to picket dockside at both of its terminals. The respondents rejected said offer. On December 28, 1962, said offer was reiterated to the respondents by letter and by telegram, but the letters and telegrams were not answered by the respondents.

(l) Wiggin made a proposal to the respondents wherein Wiggin offered to open a gate at the property of the Atlantic Cement Company, over which Wiggin has a right of way, so that its employees could enter its Charlestown Terminal facilities without using the main gate which was being picketed. The respondents, however, stated that they would picket at said gate even though no employee of any employer with whom the respondents are engaged in a labor dispute would be permitted to use said gate.

(m) As a result of respondents' acts and conduct aforesaid, the employees of Wiggin and Weyerhauser have refused to work or perform services for their employers.

(n) By the acts and conduct set forth in Findings of Fact 4. (j), (k), (l), and (m) above, respondents have engaged in, and have induced and encouraged individuals employed by Wiggin, Weyerhauser, and by other persons engaged in commerce or in industries affecting commerce, to engage in, refusals in the course of their employment to use, transport, or otherwise handle goods, articles, materials, or commodities or to perform services, and have coerced and restrained Wiggin, Weyerhauser and other persons engaged in commerce or in industries affecting commerce.

(o) An object of the acts and conduct of respondents set forth in Findings of Fact 4. (j), (k), (l), (m), and (n) above, was and is (1) to force or require Weyerhauser and other persons to cease doing business with Wiggin, and (2) to force or require Wiggin to cease doing business with Norton, Peabody, Furness Withy, Powell, and Boston, and other persons.

(p) The acts and conduct of respondents set forth in Findings of Fact 4. (j), (k), (l), (m), (n), and (o), above, occurring in connection with the operations of Wiggin, have a close, intimate, and substantial relation to trade, traffic, and commerce among the several States and tend to lead to and do lead to labor disputes burdening and obstructing commerce and the free flow of commerce.

5. It may fairly be anticipated that, unless enjoined, respondents will continue and repeat the acts and conduct set forth in Findings of Fact 4. (j), (k), (l), (m), (n), and (o) above, or similar or like acts and conduct.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and of the subject matter of this proceeding, and under Section 10(l) of the Act is empowered to grant injunctive relief.

2. There is, and petitioner has, reasonable cause to believe that:

(a) Respondents Local 799, Local 800 and International are labor organizations within the meaning of Sections 2 (5), 8(b) and 10(l) of the Act.

(b) Respondents Thomas McNiff and Daniel Doherty are agents of Local 800 and Local 799, respectively, within the meaning of Sections 2(13), 8(b) and 10 (l) of the Act.

(c) Wiggin is engaged in commerce within the meaning of Sections 2(6) and (7) of the Act.

(d) Respondents have engaged in unfair labor practices within the meaning of Section 8(b) (4) (i) and (ii), subparagraph (B), of the Act, affecting commerce within the meaning of Sections 2 (6) and (7) of the Act, and a continuation of these practices will impair the policies of the Act as set forth in Section 1(b) thereof.

3. To preserve the issues for orderly determination as provided in the Act, it is appropriate, just and proper that, pending the final disposition of the matters herein involved pending before the Board, respondents, their officers, representatives, agents, servants, employees, attorneys, and all members and persons acting in concert or participation with them, be enjoined and restrained from the commission, continuation, or repetition, of the acts and conduct set forth in Findings of Fact 4. (j), (k), (l), (m), (n), and (o) above, acts or conduct in furtherance or support thereof, or like or related acts or conduct the commission of which in the future is likely or may fairly be anticipated from respondents' acts and conduct in the past.

(Order granting temporary injunction was issued. The temporary injunction read in part as follows: "The respondents are hereby enjoined and restrained from picketing at or in the vicinity of Wiggin Terminals, Inc. at South Boston or Charlestown, Massachusetts, except that the respondents, pursuant to the permission heretofore given by Wiggin, may picket dockside at both of Wiggin's terminals provided that the picketing discloses clearly the employers with whom the respondents are engaged in a labor dispute. If Wiggin withdraws its consent to such picketing the respondents may apply to the Court for a modification of this injunction.")